**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

Gregg Blackstock

       v.                                              Case No. 16-cv-411-LM

Adult Parole Board Executive
Assistant Andrea Goldberg, and
Offender Records Administrator
Cindy Crompton

## REPORT AND RECOMMENDATION

Petitioner Gregg Blackstock seeks a writ of habeas corpus
pursuant to 28 U.S.C. § 2254.  See Doc. No. 1.  The respondents
have filed a motion to dismiss (Doc. No. 17), which is before
the undersigned magistrate judge for a report and recommendation
as to disposition.  Petitioner objects.  See Doc. No. 18.

## Background

After two jury trials in the New Hampshire Superior Court
(one in Rockingham County and one in Hillsborough County),
Blackstock was convicted of four counts of aggravated felonious
sexual assault (one count in Rockingham county, three counts in
Hillsborough County).  Blackstock was sentenced to five to ten
years in prison on the Rockingham County conviction, and to
three terms of five to ten years in prison on the Hillsborough
County convictions.  The Hillsborough County sentences were

imposed as follows: (1) the first 5-10 year sentence was to be served consecutively to the Rockingham County sentence; (2) the second 5-10 year sentence was to be served consecutively to the first Hillsborough County sentence; and (3) he third 5-10 year sentence was to be served concurrently with the second Hillsborough County sentence.

> The petitioner began serving his initial sentence on January 12, 2001 . . . . On August 18, 2005, the [Adult Parole Board] held the petitioner's first parole hearing, after which it denied parole. On January 5, 2006, the [Adult Parole Board] held a second hearing, after which it granted the petitioner parole from his initial sentence to his first consecutive sentence.
>
> Nearly five years later, on November 4, 2010, the APB conducted a third hearing, after which the petitioner was denied parole. On October 10, 2011, the APB conducted a fourth hearing, after which the petitioner was granted parole to his final consecutive sentence. The petitioner remains incarcerated, and is currently serving his final sentence. The maximum term of the sentence is set to expire on October 9, 2021.

Blackstock v. Exec. Assistant, Adult Parole Bd. ("Blackstock I"), No. 2014-0720, 2016 N.H. LEXIS 166, at *1-2, 2016 WL 4103620, at *1 (N.H. June 9, 2016). The reason the Adult Parole Board ("APB") gave for denying Blackstock parole in 2010 was that he had "minimized his offenses and failed to show remorse." Blackstock v. Goldberg, No. 217-2014-CV-253, slip op. at 2 (Merrimack Cty. Super. Ct. Aug. 6, 2014) ("Blackstock II") (Doc. No. 13-2, at 13).

In May of 2014, Blackstock petitioned the Merrimack County Superior Court ("MCSC") for a writ of mandamus against the APB and the New Hampshire Department of Corrections ("DOC"). Initially, he claimed that: (1) as a matter of law, the term "parole" refers only to parole to society, and does not include parole to a consecutive sentence; (2) notwithstanding the fact that he had been sentenced to three consecutive terms of five to ten years each, under N.H. Rev. Stat. Ann. § ("RSA") 651:20, I(a)(2),[1] Blackstock's actual sentence was a single term of 15 to 30 years; (3) under RSA 651-A:6, II (repealed 2008),[2] he first became eligible for parole in 2011, after serving the five-year minimum terms of two of his five-to-ten-year sentences; (4) the APB subjected him to four parole hearings that were unlawful because they were held too early, i.e., before he had served the aggregated five-year minimum terms of two of his sentences; and (5) at his hearing in 2010, the APB unlawfully added one year to his sentence.  Blackstock asked the MCSC for several forms of relief, including an order directing "the APB to cease and desist all parole consideration events until which point in time

---

[1]RSA 651:20, I(a)(2) governs the amount of time a prisoner with consecutive sentences must serve before moving the sentencing court to suspend one of his sentences.

[2]RSA 651-A:6, II provided that when computing the length of time a released prisoner must spend on parole, the ABP was to base its computation on "the total of the [parolee's] 2 longest sentences."

[Blackstock] has reached his legal minimum parole date pursuant to RSA 651:20, I(a)(2)." Doc. No. 14-3, at 16.

In a July 7, 2014, response to the respondents' motion to dismiss his petition, Blackstock altered his legal theory to some extent, and requested, among other things, these forms of relief:

> MANDATE the DOC to calculate [Blackstock's] sentence pursuant to RSA 651-A:6, [II] as it existed [on] the date of the charged offense, making the petitioner time eligible for parole (to society) after he had served the minimum portions of the two longest sentences imposed. To wit, October 24, 2010;
>
> ORDER the APB to conduct a parole hearing (to society) . . . forthwith for the petitioner using only the mandated criteria pursuant to State statutes and promulgated rules.

Doc. No. 13-2, at 40.

After denying Blackstock's request(s) for an evidentiary hearing, the MCSC held a non-evidentiary hearing on Blackstock's petition. Thereafter, the MCSC granted the respondents' motion to dismiss and denied Blackstock's motion for reconsideration. In granting respondents' motion to dismiss, the MCSC ruled that: (1) RSA 651-A:6, II "was intended to calculate the duration of parole once an inmate was released, not the length of a minimum sentence required in order for an inmate to be considered for parole," Blackstock II, slip op. at 9; and (2) even if RSA 651-A:6, II had been intended to calculate the amount of time a prisoner had to serve before becoming eligible for parole, "the

4

2008 amendment to RSA 651-A:6 does not constitute an ex post
facto law because it does not inflict greater penalties or
change the punishment imposed on individuals under the prior
law," id. at 11.

Blackstock appealed to the New Hampshire Supreme Court
("NHSC"), challenging both the merits of the MCSC's decision and
its decision not to give him an evidentiary hearing.  The NHSC
affirmed the MCSC's decisions in Blackstock's case in all
respects.  See Blackstock I, 2016 N.H. LEXIS 166, at *25, 2016
WL 4103620, at *9.

Next, Blackstock filed the petition for a writ of habeas
corpus that is now before this court.  However, this is not the
first such petition that Blackstock has filed here.

Blackstock filed a § 2254 petition in this court on March
23, 2004.  Later, after noting that the petition raised claims
arising from convictions in two different courts, the court
ordered the clerk's office to bifurcate the claims arising from
Blackstock's two trials and open a second file.  While the order
does not say so expressly, the court presumes that the court
ordered the second file to be opened to satisfy Rule 2(e) of the
Rules Governing Section 2254 Cases in the United States District
Courts ("§ 2254 Rules"), which provides that "[a] petitioner who
seeks relief from judgments of more than one state court must
file a separate petition covering the judgment or judgments of

each court," § 2254 Rule 2(e).  Accordingly, the claims arising from Blackstock's Rockingham County conviction were designated for litigation in Blackstock v. Cattell, No. 04-cv-106-JM ("first petition"), while claims arising from his Hillsborough County convictions were designated for litigation in Blackstock v. Cattell, No. 04-cv-305-SM ("second petition").

With respect to the first petition, judgment was entered in favor of the respondent on February 10, 2005.  Blackstock filed a Notice of Appeal on March 15, 2005.  On February 23, 2006, the court of appeals issued a mandate in which it denied Blackstock a certificate of appealability and terminated his appeal.

With respect to the second petition, the matter was "stayed pending [Blackstock's] either exhausting available remedies in state court with regard to [his] unexhausted claims . . ., or his election to proceed only on the exhausted claim." Blackstock v. Cattell, No. 04-cv-305-SM, slip op. at 1 (D.N.H. Jan. 14, 2004) (ECF No. 17).  Blackstock, however, failed to provide the status reports required by the court's stay order. Consequently, on December 23, 2009, Judge McAuliffe dismissed Blackstock's second petition because it included unexhausted claims.

**Legal Standard**

A federal court may grant habeas corpus relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, the power of the federal courts to grant habeas corpus relief to state prisoners has been significantly limited by passage of the Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d). Under that statute, when a § 2254 petitioner brings a claim that "was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d),

> a federal court cannot grant habeas relief . . . "unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" [the U.S. Supreme] Court, or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Sexton v. Beaudreaux, 138 S. Ct. 2555, 2558 (2018) (quoting 28 U.S.C. § 2254(d)); see also Walker v. Medeiros, 911 F.3d 629, 633 (1st Cir. 2018).

**Discussion**

Respondents move to dismiss on two grounds: (1) that the court lack jurisdiction over this matter because it involves a second or successive habeas petition and Blackstock has not

received authorization from the court of appeals to file it in this court; and (2) the petition states no federal claims.  The court addresses each argument in turn.

## I.  Jurisdiction

According to respondents, the court lacks jurisdiction to entertain this petition because Blackstock is asserting claims that he could have litigated, but did not litigate, in his 2004 habeas corpus petitions.  Petitioner disagrees, pointing out that the litigation of those petitions had concluded by 2009, while this petition asserts claims arising from the APB's 2011 action.  Respondents' jurisdictional argument is not persuasive.

The federal law of habeas corpus provides that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless [the applicant makes certain showings.]"  28 U.S.C. § 2244(b)(2).  Those showings, however, must be made in the court of appeals; "[b]efore a second or successive application permitted by [§ 2244] is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."  28 U.S.C. § 2244(b)(3)(A).  Finally, when a petitioner includes both successive claims and claims that are not successive in the same petition, he "should be

given the option of seeking authorization from the court of appeals for his 'second or successive' claims, or of amending his petition to delete those claims so he can proceed with the claims that require no authorization." Pennington v. Norris, 257 F.3d 857, 859 (1st Cir. 2001).

Even though the § 2254 petition before the court is, numerically, Blackstock's third. As Blackstock has not moved the court of appeals to authorize the filing of the petition in this action, the question before the court is whether any of the claims that Blackstock asserts in this petition are successive to his first petition.[3]

In Restucci v. Bender, the court of appeals was presented with an application to file a second or successive habeas corpus petition. See 599 F.3d 8, 9 (1st Cir. 2010) (per curiam). Like Blackstock, the applicant in Restucci was not challenging his

---

[3]Blackstock's second petition, which was dismissed in 2009, is immaterial to the second-or-successive analysis because it was dismissed as a mixed petition rather than being denied on the merits, and "[i]f a prior petition is not adjudicated on the merits, a later-filed petition is not deemed second or successive [to it]," Ellison v. Warden, No. 12-cv-36-PB, 2012 U.S. Dist. LEXIS 91962, at *10, 2012 WL 2590496, at *4 (D.N.H. July 2, 2012) (citing Pratt v. United States, 129 F.3d 54, 60 (1st Cir. 1997)); see also Strickland v. Thaler, 701 F.3d 171, 175 (5th Cir. 2012) ("A petition filed after a mixed petition has been dismissed under Rose v. Lundy [455 U.S. 508 (1982)] before the district court adjudicated any claims is to be treated as any other first petition and is not a second or successive petition.") (quoting Slack v. McDaniel, 529 U.S. 473, 486 (2000)) (internal quotation marks omitted).

conviction but was challenging a decision related to parole.

See id.  Ultimately, the court of appeals determined that, for

the purposes of § 2244, Restucci's petition was not second or

successive.  The court explained its determination this way:

> [S]ince Restucci's current claims arose well after his
> prior habeas petitions and application for leave to
> file a second or successive petition seeking review of
> his state court conviction were denied, he could not
> have raised them in the earlier petitions; we
> therefore conclude, and the State agrees, that the
> claims are not "successive" for purposes of § 2244(b).
> Accordingly, petitioner does not require authorization
> from this court prior to filing his parole-based
> claims in federal district court.

Id. at 10.

Here, claims based upon decisions the APB made in 2010 and

2011 arose five or six years after Blackstock's first habeas

petition was denied and four or five years after the court of

appeals terminated his appeal from the denial of his first

petition.  Thus, claims based upon the APB's 2010 and 2011

decisions: (1) could not have been raised in Blackstock's first

petition; (2) are not second or successive for purposes of §

2244; and (3) did not require authorization from the court of

appeals before Blackstock could file them in this court.

That leaves the claims based upon the APB's 2005 and 2006

decisions, and the dispositive question is whether Blackstock

could have raised those claims in his first petition.  If so,

then those claims are successive to the first petition, and

cannot be raised in this court without authorization from the court of appeals.  However, if Blackstock could not have raised claims based upon the 2005 and 2006 APB decisions in his first petition, then those claims are not successive and may be asserted in this court without authorization from the court of appeals.

Respondents' characterization of the current petition as successive rests upon the following argument:

> Although the claims regarding the Adult Parole Board post-date the filing of the petition as the APB's actions occurred in 2005, 2006, 2010, and 2011, the petitions filed in this Court were not dismissed until February 27, 2007 and December 23, 2009.  The petitioner could have filed a motion to amend his pending petitions.  See Fed. R. Civ. P. 15 . . . .  He did not move to amend the petition.

Resp't's Mot. to Dismiss (Doc. No. 17) 8.  Blackstock's second petition was dismissed on December 23, 2009.[4]  But respondents' reference to February 27, 2007, appears to be erroneous; the court's docket indicates no activity on Blackstock's first petition on that date.  Indeed, judgment entered on Blackstock's

---

[4]As the court has explained, that petition is irrelevant to the second-or-successive analysis as it was dismissed without prejudice.  But even if it were not, it seems unlikely that Blackstock would have been permitted to add a parole-related claim to that petition because: (1) it asserted claims arising from Blackstock's Hillsborough County convictions; (2) there is no indication that he ever litigated any parole-related issues in the Hillsborough County Superior Court; and (3) under Habeas Rule 2(e), "[a] petitioner who seeks relief from judgments of more than one state court must file a separate petition covering the judgment or judgments of each court."

first petition on February 10, 2005.  That was six months before

the APB took the first action that Blackstock challenges in this

petition, and respondents do not indicate how Blackstock could

have amended a petition on which judgment had been entered

against him.  The court is unaware of any procedural mechanism

through which he could have done so, and amendment to add

parole-based claims to a habeas petition asserting claims

arising from Blackstock's Rockingham County conviction would

appear to have been precluded by Habeas Rule 2(e), given that

there is no indication that Blackstock ever litigated any

parole-related claims in the Rockingham County Superior Court.

In short, claims arising from the APB's actions in 2005 and 2006

are not successive to Blackstock's first petition, and his

failure to seek permission from the court of appeals to assert

them here provides no obstacle to this court's consideration of

them.


II.   <u>Failure to State a Federal Claim</u>

     Respondents next argue that Blackstock's petition does not

state any federal claims because: (1) there is no federal

constitutional right to parole; and (2) his petition turns on

alleged errors of state law, not violations of federal law that

are cognizable under § 2254.  As for respondents' first

argument, a person who has been convicted, and who is serving a

valid sentence of incarceration, does not have a federal
constitutional right to be released from his incarceration, by
means of parole or otherwise, "before the expiration of a valid
sentence." González-Fuentes v. Molina, 607 F.3d 864, 886 (1st
Cir. 2010) (quoting Greenholtz v. Inmates of Neb. Penal & Corr.
Complex, 442 U.S. 1, 7 (1979)).  However, given the panoply of
constitutional claims that Blackstock asserts in his petition,
some of which arguably fall outside the scope of the principle
stated in González-Fuentes, the court turns to a claim-by-claim
evaluation of respondents' argument that petitioner has failed
to assert any cognizable federal claims.

    A.  Claim One

    In its order on preliminary review, the court framed
Blackstock's first claim this way:

> In considering Blackstock for parole in 2005, 2006,
> 2010, and 2011, the respondents calculated his
> sentence length and parole eligibility pursuant to
> statutes and administrative rules enacted after he was
> sentenced, and in a manner that increased the length
> of his minimum sentence, in violation of: (a) the Ex
> Post Facto Clause of the United States Constitution,
> and (b) his Fourteenth Amendment right not to be twice
> punished for a single offense.

Doc. No. 4, at 4.  The court considers each legal theory in
turn.

1.   Ex Post Facto Law

"The States are prohibited from enacting an ex post facto law." Garner v. Jones, 529 U.S. 244, 249 (2000) (quoting U.S. Const. art. I, § 10, cl. 1).  With respect to the claim Blackstock asserts in his petition, "the Ex Post Facto Clause . . . bar[s] enactments which, by retroactive operation, increase the punishment for a crime after its commission.  Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." Garner, 529 U.S. at 249-50 (internal citations omitted).

The legislative enactment at issue here is the 2008 repeal of RSA 651-A:6, II.  Before its repeal, that statute provided that "[w]hen a person is subject to multiple concurrent or consecutive sentences of imprisonment, as provided in RSA 651:3, III, the provisions of this section shall be computed from the total of the 2 longest sentences, subject to the provisions of RSA 651-A:14."[5]

After RSA 651-A:6, II was repealed, the provisions of RSA 651-A:6 were to be computed from the total of all of an inmate's sentences, not just the total of the two longest.  However, until it was amended in 1991, RSA 651-A:6, II had provided that

---

[5]RSA 651-A:14, which has since been repealed, provided for early discharge from parole for good conduct.

the provisions of RSA 651-A:6 were to be computed from the single "longest of [a prisoner's] sentences."

According to Blackstock, RSA 651-A:6, II governed the computation of his minimum sentence and the date on which he became eligible for parole (to society), and that by failing to make those computations using his "2 longest sentences," in 2010 and 2011,[6] the APB violated the Ex Post Facto Clause by submitting him to a more onerous punishment than was provided by the law in force when he was sentenced.[7]  Respondents argue that because "the newer law  did not increase [Blackstock's] sentence, it cannot have violated the prohibition against ex post facto laws."  Resp't's Mot. to Dismiss (Doc. No. 17) 11.

In its decision affirming the MCSC's denial of Blackstock's mandamus petition, the NHSC conducted an extensive statutory analysis of RSA 651-A:6, II, and held that that provision "set forth the calculation of the duration of parole upon release from prison, not the calculation of the minimum parole

---

[6]Blackstock's ex post facto claim in this case encompassed all four of the APB's actions, including its decisions in 2005 and 2006.  Because the only legislative action at issue here is the 2008 repeal of RSA 651-A:6, II, and that statute was not altered between 1991 and 2008, it is logically impossible for the APB to have done anything in 2005 or 2006 that amounted to the application of an ex post facto law.

[7]Specifically, Blackstock claims that under RSA 651-A:6, II, he became eligible for release to society after serving ten years in prison, the aggregated minimum terms of his two longest sentences.

eligibility date for an inmate serving multiple sentences."
Blackstock I, 2016 N.H. LEXIS 166, at *11, 2016 WL 4103620, at
*4.  Because the APB did not calculate the duration of
Blackstock's post-release parole in either 2010 or 2011, it did
not make any decision based upon the state of the law resulting
from the repeal of RSA 651-A:6, II.  That, in turn, precludes
Blackstock's claim that the APB violated the Ex Post Facto
Clause by applying a legislative enactment that postdated his
conviction and sentencing.

To be sure, Blackstock claims that the NHSC erred in its
construction of RSA 651-A:6, II.  But, the NHSC's construction
of that statute is a question of state law, "and an error 'under
state law is not a basis for habeas relief.'"  Hardy v. Maloney,
909 F.3d 494, 499 (1st Cir. 2018) (quoting Estelle v. McGuire,
502 U.S. 62, 71-72 (1991)).  In sum, Blackstock's Ex Post Facto
Clause claim presents no basis for granting him relief under §
2254.

### 2.   Double Jeopardy

Under the Double Jeopardy Clause of the Fifth Amendment to
the United States Constitution, which is made applicable to the
states by the Fourteenth Amendment, see Martínez-Rivera v.
Sánchez Ramos, 498 F.3d 3, 8 n.6 (1st Cir. 2007) (citing Benton
v. Maryland, 395 U.S. 784, 794 (1969)), "[n]o person shall . . .

be subject for the same offense to be twice put in jeopardy of

life or limb," U.S. Const. amend. V.  More specifically:

> [t]he Double Jeopardy Clause affords protection in
> three distinct situations: "It protects against a
> second prosecution for the same offense after
> acquittal.  It protects against a second prosecution
> for the same offense after conviction.  And it
> protects against multiple punishments for the same
> offense."

Ferrell v. Wall, 862 F. Supp. 2d 88, 103 (D.R.I. 2012) (quoting

Jackson v. Coalter, 337 F.3d 74, 81 (1st Cir. 2003).

According to Blackstock, he was subjected to the third form

of double jeopardy described in Ferrell because: (1) RSA 651-

A:6, II effectively abolished consecutive sentences in New

Hampshire and made all sentences concurrent, thus transforming

his three consecutive sentences of 5 to 10 years into a single

sentence of 15 to 30 years[8]; (2) the statute also required the

ABP to consider him for parole, to society, after he had served

ten years in prison (i.e., the aggregated minimum terms of his

two longest sentences); and (3) by paroling him to a third

consecutive sentence in 2011, when his three consecutive

sentences had been aggregated into a single sentence by

operation of law, the APB imposed a second punishment for the

---

[8]In his mandamus petition, Blackstock contended that the
aggregation of his three consecutive sentences into a single
sentence occurred by operation of RSA 651:20, I(a)(2).  He
appears to have abandoned that theory of aggregation.

same offense.  In petitioner's view, by paroling him to a
consecutive sentence, the APB "forced [him] to serve sentences
that clearly were not intended to be served consecutively."
Pet. (Doc. No. 1) ¶ 229.

However, when considering Blackstock's appeal of the MCSC's
denial of his mandamus petition, the NHSC declined to address
his double-jeopardy claim because: (1) "he [had] not
sufficiently developed [that] argument for [the NHSC's] review,"
Blackstock I, 2016 N.H. LEXIS 166, at *21, 2016 WL 4103620, at
*8; and (2) it had "repeatedly stated [that] 'judicial review is
not warranted for complaints regarding adverse rulings without
developed legal argument,'" id. (quoting State v. Durgin, 165
N.H. 725, 731 (2013)).

The NHSC's decision not to address Blackstock's double-
jeopardy claim "constitute[s] independent and adequate state-law
grounds for the judgment that . . . effectively preclude [this
court's] direct review of the forfeited argument, absent certain
special circumstances," Lucien v. Spencer, 871 F.3d 117, 124
(1st Cir. 2017) (citing Barbosa v. Mitchell, 812 F.3d 62, 67
(1st Cir. 2016)).  The "special circumstances" to which the
Lucien court referred is a showing, by the petitioner, of cause
for his default and prejudice resulting therefrom.  See Barbosa,
812 F.3d at 67.  Because petitioner has not shown cause and
prejudice, the procedural default of his double-jeopardy claim

cannot be excused.  That, in turn, precludes this court from
reviewing that claim.

Because Blackstock has failed to state an Ex Post Facto
Clause claim and because his double-jeopardy claim has been
procedurally defaulted, the district judge should dismiss Claim
One in its entirety.


B.  Claim Two

In its order on preliminary review, the court framed
Blackstock's second claim this way:

> Blackstock's Fourteenth Amendment Due Process right to
> fair notice of the punishment to which his criminal
> offenses might subject him was violated when the
> respondents failed to properly apply the parole
> release statute in effect at the time of Blackstock's
> crimes [i.e., RSA 651-A:6, II] to calculate his parole
> eligibility and eligibility for release to society,
> when Blackstock was considered for parole in 2005,
> 2006, 2010, and 2011.

Doc. No. 4, at 4-5.

The Supreme Court has explained that under the Fourteenth
Amendment, "elementary notions of fairness enshrined in our
constitutional jurisprudence dictate that a person receive fair
notice not only of the conduct that will subject him to
punishment, but also of the severity of the penalty that a State
may impose."  Hinds v. Lynch, 790 F.3d 259, 269 (1st Cir. 2015)
(internal quotation marks and alternations omitted) (quoting
State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 417

(2003)).  However, as the court has already explained, RSA 651-
A:6, II was used to calculate "the duration of parole upon
release from prison," Blackstock I, 2016 N.H. LEXIS 166, at *11,
2016 WL 4103620, at *4, a calculation that the APB has yet to
perform in this case.  Thus, just as Blackstock has failed to
state an Ex Post Facto Clause claim based upon a purported
misapplication of the law pertaining to post-release parole,
i.e., RSA 651-A:6, II, he has failed to state a Fourteenth
Amendment claim based upon the same purported error.  For that
reason, Claim II should be dismissed.


        C.  Claim Three

        In its order on preliminary review, the court framed
Blackstock's third claim this way:

        The respondents acted outside of their authority by
        granting him, in 2006 and 2011, "administrative
        parole," which was parole to his consecutive sentence,
        without releasing him from incarceration, when state
        law and administrative regulations authorized only his
        parole to society, in violation of Blackstock's
        Fourteenth Amendment Due Process rights.

Doc. No. 4, at 5.

        The problem with Claim Three is that New Hampshire state
law does authorize the APB to parole prisoners to consecutive
sentences.  The NHSC said so in Petition of Warden (State v.
Roberts), 168 N.H. 9, 15 (2015), and when affirming the MCSC's
denial of Blackstock's mandamus petition, the NHSC relied on

20

<u>Petition of Warden</u> to reject Blackstock's contention that

"parole to a consecutive sentence violates due process,"

<u>Blackstock I</u>, 2016 N.H. LEXIS 166, at *18, 2016 WL 4103620, at

*6.  Moreover, even if the NHSC misconstrued New Hampshire state

law concerning parole, "an error 'under state law is not a basis

for habeas relief,'" <u>Hardy</u>, 909 F.3d at 499 (quoting <u>Estelle</u>,

502 U.S. at 71-72).  In sum, the district judge should dismiss

Claim Three.


      D.  <u>Claim Four</u>

     In its order on preliminary review, the court framed

Blackstock's fourth claim this way:

> Blackstock's Fourteenth Amendment right to equal
> protection was violated when, in 2005, 2006, 2010, and
> 2011, respondents treated him differently, in
> consideration of his parole eligibility, than
> offenders who did not have consecutive sentences, but
> were otherwise similarly situated to Blackstock.

Doc. No. <u>4</u>, at 5.  Blackstock's equal-protection claim is that:

(1) the criteria the APB uses to determine whether to grant

parole focus on factors such as risk to the public that apply to

prisoners paroled to society; (2) because those criteria focus

on factors that pertain to parole to society, to the exclusion

of factors that pertain to parole to a consecutive sentence, a

prisoner coming before the APB for a decision on parole to a

consecutive sentence is not informed of the criteria that will

guide the APB's decision, which places him in a disadvantageous position as compared to prisoners coming before the APB for decisions on parole to society.

"The Fourteenth Amendment's Equal Protection Clause prohibits a state from treating similarly situated persons differently because of their classification in a particular group." <u>Mulero-Carrillo v. Román-Hernández</u>, 790 F.3d 99, 105-06 (1st Cir. 2015) (citing U.S. Const. amend. XIV, § 1).

> Generally, for an equal protection claim to survive a motion to dismiss, a plaintiff must allege facts plausibly demonstrating that "'compared with others similarly situated, [the plaintiff was] selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"

<u>Mulero-Carrillo</u>, 790 F.3d at 106.  Where, as here, "there is no implication of a fundamental right being affected," <u>id.</u> at 106, and petitioner does "not claim to belong to a suspect classification," <u>id.</u>, the APB's parole "decisions require only rational basis review," <u>id.</u>

Blackstock has failed to adequately allege selective treatment based upon his status as a prisoner up for parole to a consecutive sentence to demonstrate a violation of the Equal Protection Clause.  As stated above, the treatment at the heart of Blackstock's equal protection claim is being given a parole hearing at which the APB based its decision on criteria that,

purportedly, he had not been informed of, while prisoners up for parole to society are able to come into their hearings with full knowledge of the criteria the APB will use to make its decision.

Blackstock attached to his petition a copy of the regulations that set out ten different the criteria the APB "shall consider" when evaluating a prisoner for parole, see Doc. No. 1-2, at 36.  Criterion (b), "[t]he appropriateness and adequacy of [the prisoner's] parole plan," id., focusses on factors such as the prisoner's employment plan and proposed residence in the community.  Criterion (b) pertains exclusively to prisoners up for parole to society.  The remaining nine criteria, however, are equally applicable to both prisoners being considered for parole to society and prisoners being considered for parole to a consecutive sentence.  To take two examples, criterion (a) is "[t]he inmate's personality, maturity, sense of responsibility, and any developments in personality which might promote or hinder the [inmate's] conformity to the law," id., and criterion (j) is "[t]he inmate's attitude and conduct during the parole hearing," id.

Moreover, the reason the APB gave for denying petitioner parole in 2010, lack of remorse, see Blackstock II, slip op. at 2, is listed as criterion (f) in the applicable parole regulation.  For all practical purposes, the regulations demonstrate no appreciable differences in the way that prisoners

23

are treated at their parole hearings based upon whether they are up for parole to society or parole to a consecutive sentence, and Blackstock has alleged no facts to support a claim that prisoners who are up for parole to consecutive sentences are less well informed about the criteria the APB will use at their parole hearings than prisoners who are up for parole to society.

Because he has failed to allege selective treatment, Blackstock has failed to state a Fourteenth Amendment equal protection claim.  Accordingly, the district judge should dismiss Claim Four.

### E.   Claim Five

In its order on preliminary review, the court framed Blackstock's fifth claim this way:

> RSA 651-A:6, II, in effect at the time of Blackstock's criminal offenses and sentencing, was unconstitutionally vague, and thus void, and respondents should have applied its predecessor statute for purposes of calculating his parole eligibility.

Doc. No. 4, at 5.  The predecessor statute to which petitioner refers is the version of RSA 651-A:6, II that was in effect up until 1991, under which the provisions of RSA 651-A:6 were to "be computed from the longest of [a prisoner's] sentences," rather than his two longest sentences.

In Blackstock's view, because the pre-1991 version of RSA 651-A:6, II applied to his parole (and because Blackstock believes that the term "parole" means nothing other than release to society), the APB was obligated to release him to society in 2006.  But, as the court has said several times, RSA 651-A:6, II concerns the computation of how long a parolee must remain on parole after his release from prison.  The APB has never had the occasion to compute how long Blackstock must be on post-release parole, so it has never applied RSA 651-A:6, II, or made a decision based upon the state of the law created by the repeal of that statute.  Accordingly, Blackstock has failed to demonstrate that any statute the APB actually applied in considering him for parole is unconstitutionally vague, and the district judge should dismiss Claim Five.

    F.  <u>Claim Six</u>

In its order on preliminary review, the court framed Blackstock's sixth claim this way:

> The Superior Court's failure to provide Blackstock with an evidentiary hearing prevented Blackstock from providing the court with relevant evidence in his mandamus proceedings in state court, in violation of (a) his First Amendment right to access the courts, and (b) his Fourteenth Amendment due process rights.

Doc. No. <u>4</u>, at 5.  Respondents move to dismiss this claim, arguing, among other things, that the United States Constitution

does not require states to provide post-conviction proceedings
of any sort.

### 1.  Access to the Courts

"The right of access to the courts, in the context of
prisoners, is addressed only to a prisoner's right to attack his
conviction and his right to challenge the conditions of his
confinement.  Impairment of any <u>other</u> litigating capacity is
simply one of the incidental (and perfectly constitutional)
consequences of conviction and incarceration." <u>Riva v.
Brasseur</u>, No. 15-2554, 2016 U.S. App. LEXIS 23932, at *3, 2016
WL 9650983, at *1 (1st Cir. Sept. 12, 2016) (emphasis in the
original) (citing <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996);
<u>Bounds v. Smith</u>, 430 U.S. 817 (1977)).  Because
Blackstock's mandamus petition did not attack his conviction or
challenge the conditions of his confinement, he had no
constitutional right to any kind of a hearing on his petition,
much less the evidentiary hearing he asked for in place of the
hearing he did receive.  Accordingly, the district judge should
dismiss Claim Six to the extent it asserts a violation of
Blackstock's First Amendment right to access the courts.

2.   Due Process

As the court has already pointed out, "[t]here is no
constitutional or inherent right of a convicted person to be
conditionally released before the expiration of a valid
sentence." González-Fuentes, 607 F.3d at 886 (quoting
Greenholtz, 442 U.S. at 7).  Necessarily, then, the Fourteenth
Amendment right to due process imposes no particular
requirements on a state court entertaining a challenge to a
state agency's parole decision.

Accordingly, as a matter of law, the MCSC's decision not to
grant Blackstock an evidentiary hearing cannot support a
Fourteenth Amendment due process claim.  Because Blackstock has
stated neither a due-process claim nor an access-to-the-courts
claim arising from the MCSC's decision to deny him an
evidentiary hearing, Claim Six should be dismissed.[9]


**Certificate of Appealability**

The § 2254 Rules require the court to "issue or deny a
certificate of appealability [("COA")] when it enters a final
order adverse to the party" in a § 2254 action.  § 2254 Rule
11(a).  For the reasons set forth above, the district judge

---

[9]The respondents may also be arguing that Claim Six has been
procedurally defaulted, but because Claim Six does not state a
cognizable federal constitutional claim, there is no need to
address whether that claim is procedurally defaulted.

should find that Blackstock has not made a substantial showing of the denial of a constitutional right and decline to issue a certificate of appealability.  See 28 U.S.C. § 2253(c); § 2254 Rule 11(a).


## Conclusion

For the foregoing reasons, the district judge should grant Respondents' motion to dismiss (Doc. No. 17) the petition in this case, and should also decline to issue a certificate of appealability.  Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The 14-day period may be extended upon motion.  Failure to file a specific written objection to the Report and Recommendation within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

February 5, 2019

cc:  Gregg Blackstock, pro se
     Elizabeth C. Woodcock, Esq.